UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. MORANO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civ. No. 2:12-CV-00606 (KM)(MAH)<br><br>MEMORANDUM OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

  The plaintiff, John J. Morano ("Morano"), brings this putative class action against defendant, BMW of North America, LLC ("BMWNA"), for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of contract, breach of warranty, and punitive damages. The dispute arose when the battery in Morano's new BMW automobile would not hold a charge and his BMW dealer refused to replace it. Plaintiff alleges that BMWNA failed to clearly disclose the basis for excluding the battery problem from its Ultimate Service Program (the "Maintenance Program") and New Passenger Vehicle Limited Warranty (the "Warranty"). Plaintiff seeks to represent a class of "all persons or entities residing in the state of Florida who purchased or leased a BMW automobile within the four (4) year period preceding the date on which the Complaint is filed."

  BMWNA has moved to dismiss Morano's claims, arguing that he failed to plead his FDUTPA claim with the particularity required by FED. R. CIV. P. 9(b); that his breach of contract and breach of warranty claims fail for lack of privity; that the battery problem resulted from the manner in which Morano operated the vehicle; and that the punitive damages claim is unsupported by factual allegations. BMWNA also argues that the class action allegations are unsustainable because individual issues of causation predominate over any common issues of law or fact.

Pleading deficiencies aside, BMWNA's central legal argument is that it is not in privity with customers and therefore cannot be liable under applicable Florida law for breach of warranty or breach of contract. This comes as a surprise to the Court, as it doubtless would to consumers. BMWNA's warranty states that it runs to "the first retail purchaser." But BMWNA makes no direct sales or leases to customers; it sells and leases cars only through its dealers. If the Warranty and Maintenance Program apply only to BMWNA's direct customers, then they apply to nobody. If this privity argument were correct, then BMWNA's aggressively marketed Warranty and Maintenance Program would be unenforceable, not to say illusory. I am fairly certain, however, that when Florida BMW owners bring their cars to the dealer for warranty servicing, they are not told to go away because they lack privity. At any rate, I do not agree that the Supreme Court of Florida would interpret that State's law to require privity in these circumstances. A more germane issue is whether the Warranty and Maintenance Program cover, or should have covered, the claimed defect. That, of course, is a separate issue, and a genuine one.

I have reviewed the parties' submissions, and I heard oral argument on December 16, 2012. For the reasons set forth below, the Court is persuaded that the Complaint adequately sets forth claims for relief on Mr. Morano's part, and that a decision on class certification would be premature. Defendant's motion to dismiss will therefore be **DENIED**.

## I. BACKGROUND

On or about September 17, 2009, John Morano, a citizen of Florida, leased a BMW 650i CV from the Paul Miller BMW dealership, which is located in Wayne, New Jersey. (Compl. ¶¶ 1, 18-19.) Plaintiff leased his vehicle from a New Jersey dealership because his local BMW dealership, BMW of Fort Myers, referred him there. (*Id.* ¶ 20.) Defendant BMWNA is a Delaware Limited Liability Company with its principal place of business in Woodcliff Lake, New Jersey. (*Id.* ¶ 2.) BMWNA is the North American importer, distributor, marketer, and warrantor of BMW brand vehicles. (Memorandum of Law in Support of Motion to Dismiss ("Def. Mem."), ECF No. 10-1, at 4 n.3.) BMWNA does not sell or lease vehicles directly to consumers; it does so solely through dealerships, which also serve as repair centers. (*Id.*)

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, the diversity statute, as amended and supplemented by the Class Action Fairness Act of 2005. The claims of the individual members of the proposed class exceed the sum or value of $5,000,000, exclusive of interests and costs, and at least

one member of the proposed class (*i.e.,* Mr. Morano himself) is a citizen of a different state (Florida) from BMWNA (New Jersey and Delaware). *See* 28 U.S.C. § 1332(d)(2) ("minimal diversity" requirement of the Class Action Fairness Act); 28 U.S.C. § 1332(d)(10) (for class action purposes, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

A. <u>BMWNA's "Ultimate Service" Maintenance Program</u>

New BMW vehicles come with a 4 year/50,000 mile Ultimate Service "no maintenance" program. The model year 2009 BMW 6 Series Service and Warranty Information manual describes the Maintenance Program, in part, as follows:

> The BMW Maintenance Program is a benefit designed to help reduce the cost of ownership. This program has been devised with the following objectives: to maximize vehicle safety, reliability, and resale value by minimizing breakdowns resulting from wear, and minimizing cost and inconvenience by computing maintenance intervals based upon the specific manner in which each individual vehicle is driven. 2009 1, 3, 5, and 6 Series vehicles purchased[1] from any authorized BMW center in the United States or Puerto Rico are covered by The BMW Maintenance Program for 48 months or 50,000 miles.

(Dalton Decl., ECF No. 10-5, Ex. A., pp. 1-2.) Exclusions from coverage under the Maintenance Program include the following: damage which results from negligence, improper operation of the vehicle, wear and tear or deterioration due to driving habits or conditions, improper repair, environmental influences, flood, accident, or fire damage. (*Id.* at p. 2.)

Typically, when a court relies on matters outside of the pleadings, it must convert the motion to dismiss into a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. That procedure is designed to provide all parties with a reasonable opportunity to present and respond to all materials pertinent to the motion. *See* FED. R. CIV. P. 12(d); *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). A court may, however, consider extraneous documents that are referred to in the complaint or documents on which the claims in the complaint were based without converting the motion to dismiss into one for summary

---

[1] BMWNA disclaims reliance on any distinction between leases and purchases for these purposes.

judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997); *Pension Benefit,* 998 F.2d at 1196. That is permitted because, when a complaint refers to or relies on the document, "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit,* 998 F.2d 1192 at 1196–97. Therefore, I will rely on the Maintenance Program and Warranty – which are the very foundation of the Complaint – and will not convert the motion to dismiss into one for summary judgment.

B. <u>BMWNA's New Passenger Vehicle Limited Warranty</u>

New BMW vehicles also come with a 4 year/50,000 mile New Passenger Vehicle Limited Warranty. The warranty for the 2009 BMW 6 Series explicitly names BMWNA as the "warrantor." (Dalton Decl., Ex. A., p. 33) BMWNA "warrants 2009 U.S. specification vehicles distributed by BMWNA or sold through the BMWNA European Delivery Program against defects in materials or workmanship to the first retail purchaser, and each subsequent purchaser." (*Id.*) The Warranty provides that "upon discovery of a defect in material or workmanship" the vehicle must be brought to the workshop of an authorized BMW center. "The BMW center will, without charge for parts of labor, either repair or replace the defective part(s) using new or authorized remanufactured parts." (*Id.*)

As is common, this Warranty contains exclusions. Excluded from coverage are, among other things, damage "which results from negligence, improper operation of the vehicle, improper repair, lack of or improper maintenance [and] . . . [f]ailure to maintain the vehicle properly in accordance with the instructions in the Owner's Manual or the Service section of this Statement, that results in the failure of any part of the vehicle . . . ." (*Id.*) Regarding batteries in particular, the Service and Warranty Information Manual (which contains the Maintenance Program and the Warranty) provides:

**Battery Care**

> If your car is driven only for short distances of less than 10 miles over a prolonged period of time, without an occasional drive at highway speeds, the engines [sic] charging system will not maintain the battery. Insufficient use of the vehicle could result in short term starting problems and in the long term could damage the battery.

(Dalton Decl., Ex. A., p. 18.) In short, the Warranty, like the Maintenance Program, excludes from coverage losses caused by the owner's failure to use or maintain the car properly.

C. <u>Morano's Experience</u>

The Plaintiff, Mr. Morano, states that he saw BMW's advertisements touting the Maintenance Program and Warranty and visited his local BMW center in Fort Myers, Florida. (Compl. ¶¶ 1, 17-20.) That Fort Myers dealer gave Mr. Morano a brochure explaining BMW's comprehensive "no-cost ownership" program. (*Id.* at ¶ 17.) The Fort Myers dealership did not enter into a lease with Morano, but arranged for him to lease a new BMW 650i convertible through a BMW dealership in New Jersey. (*Id.* at ¶¶ 18-19.)

Very soon after Morano acquired the car, the battery failed to hold a charge. (*Id.* at ¶ 21.) Morano alleges that he operated and maintained his vehicle properly and that the battery problems occurred through no fault of his own. When he took the vehicle to the Fort Myers dealer in January 2011, the service technicians noted the following on his invoice:

> cked faults, more than 20 faults, almost all from low battery voltage, cleared and reset all systems, recked only battery exhaustive discharge will not clear. as/per serv. Writer, charge battery reset today/ok. after charging most of the day, recked battery, only 400 cca in a 850cca battery, test with midtronics shows replace battery, advised serve. writer/ok.

(Labrie Decl., ECF No. 10-2, ¶ 2, Ex. A. [spelling and abbreviations as in original]) The car's onboard diagnostic system provided the technicians with information about the car's battery and charge status, as well as its driving history. (Labrie Decl. ¶ 3.) In the preceding 32 days, Plaintiff's vehicle had been driven 65 times for a total of 388 miles – an average of about 6 miles per trip. (*Id.*) The system reported the following trip breakdown:

        < 3 miles:         22 trips

        3 – 12.5 miles:     33 trips

        12.5 – 62 miles:   10 trips

(*Id.*)

    This information, says BMWNA, establishes that the battery died because Morano failed to follow the Service and Warranty Information Manual's requirements. (Def. Mem. at 5.) In particular, "Plaintiff's battery 'died' because his vehicle was used predominately for very short trips, not because of any alleged defect . . . 85% of trips in the prior thirty-two days were about 12.5 miles or less." *Id.* It was allegedly on that basis that BMW of Fort Myers refused to replace the battery. Morano then purchased a new battery at his own expense.

## II.  LEGAL STANDARD

    Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

    Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing

*Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009).

A complaint that alleges fraud is subject to the heightened pleading requirements of Rule 9(b), Fed. R. Civ. P. Such a complaint must "state with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). At a minimum, Rule 9(b) requires "that plaintiffs support their allegations of [ ] fraud with all of the essential factual background that would accompany 'the first paragraph of any newspaper story' - that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). Rule 9(b)'s particularity requirement ensures that defendants accused of fraud are placed on notice of the precise misconduct that is alleged. *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984).

## III.   DISCUSSION

The Complaint asserts five causes of action: violations of FDUTPA (Count I); breach of contract (Count II); breach of implied covenant of good faith and fair dealing (Count III); breach of express warranty (Count IV); and punitive damages (Count V).[2] BMWNA has moved to dismiss all of them. For the reasons set forth below, that motion to dismiss is **DENIED** in its entirety.

---

2   The parties agree that Florida law applies to these warranty and contract claims. That stipulation appears to be well founded. This court applies the conflicts law of New Jersey, the state in which it sits. *See Klaxon v. Stentor Mfg. Co.*, 313 U.S. 487 (1941). New Jersey follows the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee*, 197 N.J. 132, 142-43, 962 A.2d 453, 459-60 (2008). For contractual causes of action, significant factors include the place of contracting; the place of negotiation; the place of performance; the location of the contract's subject matter; the domicile or location of the parties. Restatement (Second) § 188. This Florida resident purchased the car from a New Jersey dealer, but did so as a convenience, at the instigation of his local Florida dealer. He maintained and drove the car in Florida, and attempted to have the alleged defect repaired by the Florida dealer. Performance of the warranty and/or contract occurred in Florida. Solely as to the warranty, UCC 1-105 (in effect in both Florida and New Jersey), provides that local law "applies to transactions bearing an appropriate relation to this State." *See also Aldon Industries, Inc. v. Don Myers & Assocs., Inc.*, 517

A. <u>Violation of FDUTPA (Count I)</u>

Initially, the Court must consider whether to analyze Plaintiff's FDUTPA claim under the ordinary pleading requirements of Fed. R. Civ. P. 8(a) or the heightened requirement of Rule 9(b) that fraud claims be pleaded with particularity.

Is a FDUTPA claim a fraud claim? Not necessarily. To prevail on a FDUTPA claim, a plaintiff must establish "a deceptive act or unfair practice," as well as causation and damages. *See Galstaldi v. Sunvest Cmtys. USA, LLC*, 637 F. Supp. 2d 1045, 1056 (S.D. Fla, 2009) (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d Dist. Ct. App. 2006)). "A deceptive act or unfair practice" encompasses a range of activities far broader than common law fraud. Thus it is well established that "the plaintiff need not prove the elements of fraud to sustain an action under the [FDUTPA] statute." *State of Fla. Office of Atty. Gen. v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005). It follows, then, that "[t]he requirements of Rule 9(b) do not apply" merely because a claim is brought under FDUTPA. *Guerrero v. Target Corp.*, 12-cv-21115, 2012 WL 3812324 (S.D. Fla. Sept. 4, 2012) (quoting *Galstaldi*, 637 F. Supp. 2d at 1056); *see also Tenet*, 420 F. Supp. 2d at 1310 (heightened pleading requirements of Rule 9(b) do not apply to FDUTPA claim where "claim is not premised on allegations of fraud"); *Hackett Associates v. GE Capital Information Technical Solutions*, 744 F. Supp. 2d 1305 (S.D. Fla. 2010).

Nevertheless, where FDUTPA claims *do* happen to sound in fraud, federal courts will apply the heightened pleading standard of Rule 9(b). *See Blair v. Wachovia Mortg. Corp.*, 11-cv-566-OC-37, 2012 WL 868878 (M.D. Fla. Mar. 14, 2012) (noting that "federal district courts have split as to whether FDUTPA claims are subject to Rule 9(b)" but holding that "where the gravamen of the claim sounds in fraud, as here, the heightened pleading standard of Rule 9(b) would apply"); *D.H.G. Props., L.L.C. v. Ginn Cos.*, 09-cv-735-J-34JRK, 2010 WL 5584464, at *5 n.9 (M.D. Fla. Sept. 28, 2010) ("The Court need not determine the extent to which FDUTPA claims in other contexts may or may not be subject to the heightened pleading requirements of Rule 9(b); it suffices to recognize that the allegations of misrepresentation comprising Plaintiff's FDUTPA claim in this action are grounded in fraud, and thus, required to be plead [sic] with particularity."); *Llado–Carreno v. Guidant Corp.*, 09-cv-20971, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (finding Rule 9(b) does apply); *see also Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) ("Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened

---

F.2d 188, 190-91 (5th Cir. 1975) (where purchaser of defective carpet was in Florida, carpet was installed in Florida, and economic injury occurred there, the "appropriate relation" test permitted application of Florida law to warranty claim).

8

pleading standard requirements of Rule 9(b).") I agree that, at least as to a fraud-based FDUTPA claim, the heightened pleading standard of Rule 9(b) should apply.

Applying the Rule 9(b) standard, I find that Count I adequately pleads the elements of a FDUTPA claim. The Complaint alleges that BMWNA packaged a Maintenance Program and Warranty that it promoted as providing zero-cost maintenance to purchasers. (Compl. ¶¶ 9-16.) Morano further alleges that BMWNA leased him a luxury vehicle whose battery would not retain a charge under normal operation. (*Id.* ¶ 16.) Morano points to specific marketing and advertising materials and specific language in the Maintenance Program and Warranty that would lead reasonable consumers to believe that they were covered in the event that their cars' batteries died under normal operating conditions. Morano maintains that BMWNA unfairly and deceptively relied on vague exclusions in the Maintenance Program and Warranty to deny the "no-cost" coverage that consumers bargained for.[3] And he alleges that he suffered economic loss as a result. These allegations meet the standards of Rule 9(b) and, *a fortiori*, would satisfy Rule 8(a), Fed. R. Civ. P.

Accordingly, BMWNA's motion to dismiss Count I is **DENIED**.

### B. Breach of Warranty (Count IV)

In Count IV, Plaintiff alleges breach of express warranty. To state a claim for breach of express warranty under Florida's Uniform Commercial Code, a complaint must allege: (1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to the seller;[4] and (5) the injuries sustained by the buyer as a result of the breach of the express warranty. *Dunham-Bush, Inc. v. Thermo-Air Serv.*, Inc., 351 So. 2d 351, 352 (Fla. Dist. Ct. App. 1997). The Complaint alleges that Morano performed all of his obligations under his lease contracts with BMWNA and its authorized dealerships, but that BMWNA wrongfully refused to honor the warranty with respect to the car battery.

---

[3] BMWNA's position on privity, if accepted, would also tend to solidify the conclusion that Morano has validly stated a fraud-based FDUTPA claim. (*See* discussion at Section III.B.2, below.)

[4] In its Reply Brief on this motion, BMWNA argues for the first time that the Complaint fails to allege that Morano notified BMWNA of the purported breach of warranty. (Reply Br. at 13.) In its opening brief, however, BWNA argued that "BMWNA behaved wholly in accordance with the Maintenance Program and Limited Warranty – it refused to cover a loss caused by the owner's conduct." (Def. Mem. at 7.) It is difficult to see how BMWNA could decline coverage of a claim of which it had no notice. It is also difficult to see how bringing the car to a BMW dealer for warranty repairs would not support a plausible inference of proper notice.

9

BMWNA moves to dismiss this claim, arguing that (1) BMW of Fort Myers properly refused to replace the battery because the failure was caused by Morano's own conduct; and (2) Morano's breach of warranty claim is barred because he is not in privity with BMWNA.

### 1. Loss caused by Morano's driving patterns

BMWNA relies on technicians' notes and diagnostic data to conclude that the battery failed because Morano failed to follow the Service and Warranty Information Manual's requirements. (Def. Mem. at 5.) Specifically, says BMWNA, "[p]laintiff's battery 'died' because his vehicle was used predominately for very short trips, not because of any alleged defect . . . 85% of trips in the prior thirty-two days were about 12.5 miles or less." Thus Mr. Morano's conduct, not any defect covered by the warranty, caused the battery problem.

This is not the stuff of a motion to dismiss, which requires that the court accept the allegations of the complaint as true and construe them in plaintiff's favor. *See* p. 6, *supra*. BMWNA's contentions consist of contestable factual matters that rest on sources extrinsic to the Complaint. Even taking the service records at face value, the Court could not conclude at this early stage that Morano's driving behavior fell short of what was required. The owner's manual warns that the battery may drain if the car is driven "only for short distances of less than 10 miles over a prolonged period of time." BMWNA asserts that 85% (not all) of the trips were for 12.5 miles (not 10 miles) or less, for 32 days (which may or may not be defined as a "prolonged period of time"). The diagnostic data suggests that as many as 66% of the trips could have been longer than 10 miles. *See* pp. 4-6, *supra*.

### 2. Lack of privity

BMWNA's alternative argument is nothing if not audacious. BMWNA concedes that it is the warrantor. But BMWNA operates only through dealers, and does not sell or lease cars directly to any consumer. Therefore, *no consumer is in privity with BMWNA*. If privity is required, this Warranty (at least in Florida) is enforceable by nobody. It is perhaps fortunate for BMWNA that this Court rejects its privity argument as a matter of law.[5]

The legal premise of BMWA's argument is that Florida law requires privity in order for a plaintiff to maintain a cause of action for economic damages resulting from a breach of express warranty. In this diversity case, I

---

[5]   "Fortunate" because the consequence might have been a finding that BMWNA has propounded an apparently generous but actually meaningless warranty.

10

am required to predict how the state's highest court would decide that issue of law. The best guide, of course, would be a decision on point by the Florida Supreme Court. *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 220-21 (3d Cir. 2008).

> But "in the absence of guidance from the state's highest court, [I] must look to decisions of state intermediate appellate courts, of federal courts interpreting that state's law, and of other state supreme courts that have addressed the issue," as well as to "analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would determine the issue at hand."

*Norfolk Southern Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 92 (3d Cir. 2008) (quoting *Koppers Co., Inc. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996)); *see also McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007); *West v. AT&T Co.*, 311 U.S. 223, 237 (1940).

Traditionally, privity and liability on a warranty were coextensive. Such privity limitations were logical in an era when manufacturers and ultimate buyers negotiated face-to-face over products that were relatively simple to understand and easy to inspect for quality. *See* Dean W. Russell, *Enforcing Manufacturers' Warranty Exclusions Against Non-Privity Commercial Purchasers: The Need for Uniform Guidelines*, 20 GA. L. REV. 461 (1986). But as manufacturers moved away from direct sales and increasingly sold their products through authorized dealers or retailers, courts found creative exceptions to strict privity requirements to avoid unjust results in particular cases. *See* Cornelius W. Gillam, *Products Liability in a Nutshell*, 37 ORE. L. REV. 119, 153-155 (1958). As such exceptions proliferated, courts and legislatures moved closer to acknowledging that the traditional privity rule had become outdated. *See* Christopher C. Little, *Suing Upstream: Commercial Reality and Recovery for Economic Loss in Breach of Warranty Actions by Non-Privity Consumers*, 42 WAKE FOREST L. REV. 831, 843 (2007). That trend in the law amounts to a recognition of the realities of a mass consumer economy. Most consumers now make their purchases "from a retail seller who is nothing more than an economic conduit for the manufacturer's product." Patricia F. Fonseca & John R. Fonseca, Williston on Sales § 22:10 (5th ed. 2006). Florida, like other jurisdictions, has recognized this trend. As early as 1976, the Florida Supreme Court acknowledged that "warranty law in Florida has become filled with inconsistencies and misapplications in the judiciary's attempt to provide justice to the injured consumer." *West v. Caterpillar Tractor Co.*, 336 So. 2d 80, 92 (Fla. 1976).

In 1967, in an implied warranty case, the Florida Supreme Court decided to "become aligned with those courts holding that an action may be brought against a manufacturer notwithstanding want of privity." *Manheim v. Ford Motor Co.*, 201 So. 2d 440, 441 (Fla. 1967). There, the plaintiff had purchased a defective 1964 Lincoln Continental convertible from a dealership. The complaint alleged that the dealership "warranted and represented" the car to be well constructed, without defective parts, and suitable for use as a motor vehicle. *Id.* at 440. The plaintiff also alleged that he relied upon various television and print advertisements by the manufacturer, Ford Motor Company. *Id.* at 441. Ford Motor Company did not (like BMWNA) offer a manufacturer's warranty, and Ford's agreement with its dealership expressly disclaimed any implied warranty of merchantability or fitness. *Id.* Nevertheless, the Florida Supreme Court held that neither the absence of privity between the manufacturer and purchaser nor the disclaimer of warranty between the manufacturer and dealership precluded an implied warranty claim by the purchaser against the manufacturer. *Id.*

*Manheim* was an implied warranty case, and subsequent cases have noted that it occurred in a specialized legal and factual setting. *See, e.g., Mesa v. BMW of N. Am.*, LLC, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (stating well settled law in Florida that "a plaintiff cannot recover economic losses for breach of *implied warranty* in the absence of privity")(emphasis added); *Powers v. Lazy Days RV Center, Inc.*, No.8:05-cv-1542T17EAJ, 2006 WL 373011 (M.D. Fla., Feb. 16, 2006) (noting that the sale in *Manheim* occurred before Florida's adoption of the UCC and limiting its scope to the effect of a disclaimer in a contract between a manufacturer and its dealer). Nevertheless, *Manheim's* rejection of a strict privity requirement in an action between a buyer and a car manufacturer remains instructive.

As to *express* warranty claims, Florida law regarding privity remains "murky." *See* John W. Reis, *The Magic of Privity in Express Product Warranty Claims: A Plaintiff's Perspective*, 79 FLA. B.J. 50, 50 (2005). At least two federal court cases have lumped together implied and express warranty claims, stating that that "[u]nder Florida law, the plaintiff must be in privity of contract to recover under theories of breach of express or implied warranties." *Fields v. Mylan Pharmaceuticals, Inc.*, 751 F. Supp. 2d 1257, 1259 (N.D. Fla. 2009); *T.W.M. v. American Medical Sys.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995) (same). They do so, however, without significant analysis.

Thickening the murk is the fact that the development of the law in express warranty cases has been stunted and superseded by the Magnuson-

12

Moss Warranty Act, 15 U.S.C. § 2301 et seq. ("MMWA"), enacted in 1975. The MMWA, which subsumes many (if not all) express warranty claims, loosens vertical privity requirements. *See* 13 Williston on Contracts § 37:39 (4th ed.) ("The [MMWA] enhances a consumer's position by allowing recovery under a warranty without regard to the existence of privity of contract between the consumer and the warrantor.") Thus some cases, without extensive analysis, have dismissed implied warranty claims against a manufacturer for lack of privity while allowing express warranty claims under the MMWA to go forward. *Mesa*, 904 So. 2d at 458; *Rentas v. DaimlerChrysler Corp.*, 936 So. 2d 747 (Fla. Dist. Ct. App. 2006); *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1321-22 (S.D. Fla. 2009).

*Mesa, Rentas,* and *David,* although MMWA cases, are factually parallel to this one. Each involves a consumer's express warranty claim against a car manufacturer. In each, the vehicle manufacturer was held accountable for the promises made in its express warranty. Given the persuasive rationale behind those cases, the lack of analysis in the other cited lower court decisions, and Florida's apparent willingness to relax strict privity requirements in a proper case, I do not believe that the Florida Supreme Court would adopt a literalist position here. I predict that the Florida Supreme Court, confronted by the question, would hold that vertical privity is not required under these circumstances, and would bring the common law of express warranties more in line with the MMWA.

This is not the classic privity case of a sale from A to B, followed by a sale from B to C, who is a stranger to A. Rather, BMWNA and the dealer function as an integrated, two-part seller (or lessor). BMWNA makes all of its consumer sales or leases through its authorized dealers. Each sale is accompanied by a standard express warranty, developed by BMWNA, identifying BMWNA as the warrantor. Meanwhile, the dealer handles the mechanics of the sale or lease to the retail customer. Servicing under the Warranty or Maintenance Program occurs at the authorized service center (*i.e.,* the dealer). The Warranty explicitly states it runs to the first retail purchaser and subsequent purchasers; surely BMWNA had the realities of its distribution chain in mind when it drafted this language. It is simply unconscionable to say that this Warranty, which accompanies each new car, is unenforceable against the warrantor. It defies logic to say that BMWNA's warranty flows to the first retail purchaser, but that there is no such person.

BMWNA cannot meaningfully dispute that it advertises its Maintenance Program and Warranty to attract retail consumers. Through dealerships in Florida, New Jersey, and throughout the country, BMWNA sells and leases its vehicles. Simultaneously BMWNA warrants that the vehicles it manufactures will be free from defects and that covered maintenance will be performed gratis. Buyers such as Mr. Morano reasonably rely upon such warranties. Presumably BMWNA receives an economic benefit in return for the warranties it extends to buyers.

Plaintiff's experience in purchasing his car – being shuffled between Florida and New Jersey dealerships – also suggests that BMWNA treats dealerships as fungible instruments. Discovery in this case could reveal relevant information about the level of control BMWNA exerts over dealership practices: specifically, information regarding BMWNA's role in how authorized dealerships offer manufacturer's warranties to buyers such as Morano.[6]

In short, whatever the outer limits of Florida's privity doctrine may be, I predict that the Florida Supreme Court would not find this warranty unenforceable for lack of privity. Accordingly, BMWNA's motion to dismiss Count IV is **DENIED**.

### C. Breach of Contract: The Maintenance Program (Counts II & III)

In Count II,[7] Morano alleges that BMWNA "through its agents, authorized dealers and affiliates" entered into a written Maintenance Program contract with Plaintiff. (Compl. ¶ 46.) Thereafter, Morano asserts, BMWNA failed to perform its obligations, in breach of the Maintenance Program contract. To state a claim for breach of contract under Florida law, Plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages. *Merin Hunter Codman, Inc. v. Wackenhut Corrs. Corp.*, 941 So. 2d 396, 398 (Fla. Dist. Ct. App. 2006). BMWNA asserts that elements (1) and (2) are lacking; because Morano obtained

---

[6] The allegations of the Complaint also suggest that a course of dealing may shed light on the meaning of the Warranty. Discovery may well reveal that, even in Florida, BMW dealers routinely honor the Warranty and perform covered repairs for retail customers. That would be inexplicable if, as BMWNA claims in litigation, the Warranty does not run to those retail customers.

[7] Under Florida law, breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). A claim for breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract. *Id.* (citations omitted). I therefore will not independently discuss Count III, which is inextricably tied to Plaintiff's breach of contract claim.

his car through a dealer, there is no contractual privity between BMWNA and Morano, and therefore no breach.

In short, BMWNA here makes the same lack-of-privity argument that it made in response to the warranty claim. As discussed above, the Court is not convinced that a strict adherence to the doctrine of privity is required where a manufacturer markets a car and a suite of premium vehicle maintenance services, and then sells those goods and services exclusively through authorized dealers. Further, in its motion papers, BMWNA asserts that, under the terms of the Maintenance Program and Limited Warranty, it rightfully "refused to cover a loss caused by the owner's conduct." (Def. Mem. at 7.) If BMWNA is the entity that made the decision whether to cover certain losses – conveying that decision through the local dealer – it stands to reason that the dealer acted as BMWNA's agent, or at least that the two acted together. As stated in the preceding section, the allegations are sufficient to suggest that discovery may reveal a relevant course of dealing or relevant information about the level of control BMWNA exerts over dealership practices. For the reasons stated in section III.B, *supra,* BMWNA's motion to dismiss Counts II and III is **DENIED**.

### D. Punitive Damages (Count V)

In Count V, Plaintiff alleges that BMWNA committed the acts and omissions alleged in the Complaint with a wanton and willful disregard for Plaintiff's rights. Florida law permits a claim for punitive damages where the defendant is found to have engaged in "intentional misconduct" or "gross negligence." Fla. Stat. § 768.72(2). The Florida statute provides that "intentional misconduct" means "that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage." Fla. Stat. § 768.72(2)(a).

BMWNA asserts that the punitive damages claim should be dismissed because it does not contain facts sufficient to support its conclusory allegations of intentional misconduct. Plaintiff alleges that BMWNA knowingly manufactured a vehicle with a battery that would not hold a charge, and enticed customers with Maintenance Programs and Warranties that appear to, but do not, cover such defects. It is true that the allegations as to BMWNA's knowledge are somewhat sketchy, and of course any entitlement to punitive damages must ultimately be proven, not merely alleged. But the allegations are

sufficient to raise Morano's right to relief above a speculative level. Therefore, BMWNA's motion to dismiss Count V is **DENIED**.

### E. Class Allegations

Plaintiff seeks to pursue claims on behalf of "all natural persons or entities residing in the state of Florida who purchased or leased a BMW automobile within the [four (4)] year period preceding the date on which this Complaint is filed." (Compl. ¶ 28.) According to Plaintiff, the members of the class are so numerous that joinder of all members is impracticable as the class may consist of thousands of individuals who purchased BMW vehicles during the relevant time period. (*Id.* at ¶ 29.) Plaintiff also alleges that there are common questions of law and fact (*id.* at ¶ 30), that his claims are typical of the claims of members of the class (*id.* at ¶ 31), and that he will fairly and adequately protect the interests of the members of the class. (*Id.* at ¶ 32.)

BMWNA responds that Plaintiff's class allegations are facially unsustainable under FED. R. CIV. P. 23 and must be dismissed. Specifically, BMWNA argues that individual issues of causation predominate over any common issues of law or fact. It is true that class allegations may sometimes be so facially deficient that a court can dismiss them on a Rule 12(b)(6) motion. *See General Tele. Co. v. Falcon,* 457 U.S. 147, 160 (1982)("[S]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ."); FED. R. CIV. P. 23(d)(4)(courts can order "that the pleadings be amended to eliminate therefrom allegations as to representation of absent persons, and that the action proceed accordingly."); *Clark v. McDonald's Corp.,* 213 F.R.D. 198, 205 n. 3 (D.N.J. 2003). However, dismissal of class allegations is only appropriate in "rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Myers v. Medquist, Inc.,* 05-cv-4608, 2006 WL 3751210, at *4 (D.N.J. Dec. 20, 2006) (quoting *Strzakowlski v. General Motors Corp.,* 04-cv-4740, 2005 U.S. Dist. LEXIS 18111, *26 (D.N.J. Aug. 16, 2005)).

This is not that rare case. BMWNA makes cogent arguments – for example, that individual driving histories may be dispositive, and that therefore individual claims may predominate over those that can be adjudicated *en masse*. At this early stage, however, I cannot assume or conclude that such arguments have a sufficient basis in fact. I will deny BMWNA's motion to dismiss Plaintiff's class allegations.

Class certification is to be decided "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(A) – *i.e.,* as early as possible, but not earlier. At this early stage, I cannot be confident that a grant or denial of class certification would be well founded. Plaintiff has pleaded sufficient facts to go forward. The Court will address the certification issues in due course, on a motion for class certification made under Rule 23(c) after the parties have had the opportunity to conduct necessary discovery.

### F. CONCLUSION

For the foregoing reasons, BMWNA's motion to dismiss the Complaint is **DENIED**. An appropriate order will be filed with this opinion.

_____
KEVIN MCNULTY, U.S.D.J.

Dated: February 28, 2013