UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN J. MORANO, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC,<br><br>Defendant. | Civ. No. 2:12-CV-0606 (KM)(MAH)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

While this motion was pending, boxing fans observed the 50th anniversary of the 1965 Ali/Liston fight. In an iconic photo, Muhammed Ali stands over a supine Sonny Liston, exhorting him to "Get up and fight."[1] Defendant, BMW of North America, LLC ("BMW"), finds itself in much the same position. The court, however, has no sporting interest in the continuation of this lawsuit, and will not force an unwilling plaintiff to pursue his federal claims. The motion of the plaintiff, John J. Morano, for voluntary dismissal of his complaint without prejudice, under Fed. R. Civ. P. 41(a)(2) (ECF No. 58), will be granted.

The background of the parties and claims has been fully laid out in an earlier opinion (ECF No. 32), and will only be briefly summarized here. Morano has brought a putative class action against BMW of North

---

[1] The story behind the fight and the famous photo is well told in Dave Mondy, "How Things Break," 44 The Iowa Review, vol. 3 (Winter 2014–15) (available at www.iowareview.org/from-the-issue/volume-44-issue-3-%E2%80%94winter-201415/how-things-break) and, in another version, at www.slate.com/articles/sports/sports_nut/2015/05/ali_liston_50th_anniversary_the_true_story_behind_neil_leifer_s_perfect.html).

1

America, LLC ("BMW") for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), breach of contract, breach of the covenant of good faith and fair dealing, breach of warranty, and punitive damages. On March 1, 2013, I denied BMW's motion to dismiss Morano's complaint. (ECF Nos. 32, 33) There has been no motion for class certification, and no class has been certified.

Allegedly, Morano leased a new BMW automobile and discovered that the vehicle's battery would not hold a charge. Morano requested that his BMW dealer replace the battery pursuant to BMW's maintenance program. The BMW dealer refused, determining that Morano's battery problems were excluded from coverage under BMW's warranty because they were caused by "unfavorable customer usage." Morano alleges that BMW wrongly denied warranty coverage and failed to clearly disclose the exclusion.

In his complaint, Morano seeks damages (essentially for his and similarly situated BMW owners' purchases of replacement batteries), as well as an injunction compelling BMW to change its warranty policy. Through discovery, however, Morano has discovered that BMW modified its policy in April 2011, about ten months before he filed his complaint. Under BMW's amended policy, Morano's repair would be covered. He concedes that his requested injunctive relief is therefore moot.

Morano does not wish to proceed with this federal action. He seeks to dismiss the action voluntarily and without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2).

Rule 41(a)1) allows a plaintiff to voluntarily dismiss an action as of right only if (1) the plaintiff provides "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment"; or (2) "a stipulation of dismissal [is] signed by all parties who have appeared." Otherwise, as in this case, dismissal is by leave of the

court: "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "Unless the order states otherwise, a dismissal under [Fed. R. Civ. P. 41(a)(2)] is without prejudice." *Id.*

Here, Morano moves for dismissal because he has discovered that this Court does not have, and never had, subject matter jurisdiction over his complaint. To attempt to proceed further in federal court, he believes, would be quixotic. In the end, it does not much matter whether Morano's reasons for wanting to dismiss his complaint are good ones. I nevertheless briefly discuss the jurisdictional issue.

Jurisdiction over this proposed class action is founded on diversity, pursuant to 28 U.S.C. § 1332, as supplemented and amended by the Class Action Fairness Act of 2005. To qualify, the claims of the proposed class must exceed $5 million in value. *See* 28 U.S.C. § 1332(d)(2).[2] Where damages are sought, the value of a claim may, of course, be measured by their dollar amount. Where injunctive relief is sought, the plaintiff may attempt to assign a dollar value to that claim in order to meet the diversity threshold.[3]

Jurisdiction is measured as of the date of filing of the complaint. It

---

[2] It is conceded that the parties are of minimally diverse citizenship within the meaning of 28 U.S.C. § 1332(d)(2)(a). Morano's individual claim for replacement of a car battery is not alleged to exceed the value of $75,000, the threshold for an individual diversity claim.

[3] *See Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."); C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3708 Amount in Controversy in Particular Cases—Proceedings for Injunctive and Declaratory Relief (4th ed.) ("[I]t is well-settled that the amount in controversy is to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant's conduct or the value of the object that is the subject matter of the action.").

is not lost through changed circumstances (for example, a once-diverse party's change of state citizenship). A court will, however, find that there is no subject matter jurisdiction "if after the case is filed it is discovered that there was no jurisdiction at the outset." *Cunningham Charter Corp. v. Learjet, Inc.*, 592 F.3d 805, 807 (7th Cir. 2010) (citing *Church of Scientology of California v. United States*, 506 U.S. 9, 12 (1992); *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007)). In particular, subject matter jurisdiction will be found lacking where, after the filing of a complaint, "'subsequent revelations' [show] that, in fact, the required statutory amount was not in controversy at the commencement of the action." *Huber v. Taylor*, 532 F.3d 237, 244 (3d Cir. 2008) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)). The distinction is "between subsequent *events* that change the amount in controversy and subsequent *revelations* that, in fact, the required amount was or was not in controversy at the commencement of the action." *Id.* (quoting *Jones v. Knox Exploration Corp.*, 2 F.3d 181, 183 (6th Cir. 1993) (emphasis added).

Morano says that discovery has revealed that the amount in controversy at the time of filing did not exceed $5 million.

Morano concedes that, because BMW changed its warranty policy in 2011, his request for injunctive relief is moot. He now knows that it was moot at the time he filed his complaint in 2012. The dollar value of the object of injunctive relief, then, is zero. BMW does not seem to disagree.

That leaves damages. Morano argues that discovery has revealed that the claims of the proposed class members could not possibly have added up to $5 million at the time of filing of the complaint; in fact, based on his calculations, potential damages total something less than $50,000.

4

The number of vehicles sold or leased within the time period covered by the proposed class is about 115,000, as the parties agree. (Welling Decl. ¶9; Def. Opp. 5) Morano cites to evidence produced by BMW, which shows that there are currently 4,577 Florida owners of BMW 6 Series vehicles (the particular model Morano leased). (*Id.* 6 (citing Welling Decl. Ex. 5 at 5)) BMW is aware of only two other consumers, apart from Morano, who were denied a replacement battery based on an "unfavorable driving profile." (*Id.* (citing Welling Decl. Ex. 5 at 6)) Morano calculates that the number of BMW 6 series vehicle owners allegedly harmed by BMW's policy, then, is 3 out of 4,577, or 0.00066%. (*Id.*) That percentage, applied to the total of 115,000 vehicles sold or leased in the relevant period, implies that the proposed class consists of approximately 75 consumers. If each of those 75 paid $150 for a replacement battery, the total of compensatory damages would be $11,250. Morano assumes attorneys' fees at a rate of 30%, which would yield a total of $3,375. Because Florida limits punitive damages to three times compensatory damages, the punitive damages ceiling would be $33,750. All together, then, the amount in controversy would be $48,375. That is less than 1% of the $5 million required for diversity jurisdiction; to put it another way, if Morano is off by a factor of 100, jurisdiction is still lacking.[4]

BMW — counterintuitively, to say the least — demurs, contending that the amount in controversy could top $17 million. (Def. Opp. 10) BMW arrives at this figure by multiplying the total number vehicles sold or leased (115,000) by the amount Morano paid to replace his own battery ($150), which comes out to $17,250,000. BMW's calculation assumes that (1) every single vehicle sold by BMW experienced battery trouble; (2) each example of battery trouble was attributed to an "unfavorable driving profile"; (3) each vehicle's owner was denied a free

---

[4] Morano proposes another scenario, in which he assumes that 10% of the relevant vehicle owners were harmed by BMW's warranty policy. I see no basis in the record for that assumption, and I do not consider it.

battery replacement under the Warranty; and (4) each owner paid out-of-pocket for a replacement battery. Those assumptions, seemingly plucked from the air, are highly suspect. Certainly there is a whiff of opportunism in BMW's insistence that every one of these cars is defective. And if anybody is in a position to ascertain from the dealers how many owners have sought a battery replacement, it is BMW—but BMW pleads ignorance.[5]

I need not settle definitively whether the underlying facts would support jurisdiction. Morano does not want to pursue his federal action, or perhaps thinks it is not worth investing further resources in an action that may well lack a jurisdictional foundation. Absent some prejudice to the defendant, I will not force Morano to litigate against his will.

The Third Circuit has taken a "liberal" stance toward Rule 41(a)(2) dismissals. *In re Paoli R.R. Yard PCB Litigation*, 916 F. 2d 829, 863 (3d Cir. 1990). In general, the guiding principle for a dismissal with leave of court under Rule 41(a)(2) is that

> dismissal should be allowed unless the defendant will suffer some plain legal prejudice other than the mere prospect of a second lawsuit. . . . Also, it is well established that it is not a bar to a court-granted dismissal under Rule 41(a)(2) that the plaintiff may obtain some tactical advantage thereby.

9 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure: Civil 3d § 2364, at 475–88 (footnotes and citations omitted). The touchstone, then, is "prejudice."

The only prejudice to which BMW points is the possibility of "forum

---

[5] I pause to observe that this issue has brought about an odd alignment of parties and positions. Plaintiff, in his complaint, asserted that there was diversity jurisdiction. BMW's answer denied that there was $5 million at stake. BMW mischievously agrees to be bound by that admission, provided that it can also be "bound" by its statement that plaintiff has not stated a cause of action. Each party says that the other has the burden of proof. In short, the parties have switched sides, but seemingly for purposes of this motion only.

shopping." But plaintiff could always have brought his action elsewhere if he wished to. And there is no impending development—say, an impending or actual judgment in defendant's favor—that would make withdrawal unfair. *See id.* at 500. What BMW means is that Morano might later refile his action elsewhere. That, without more, does not constitute prejudice:

> [T]he prospect of subsequent suit is inherent to every action dismissed without prejudice; on its own, it cannot logically form the basis of an argument that Defendant is harmed by the dismissal sufficient to deny it. *See In re Paoli R.R. Yard PCB Litigation*, 916 F.2d 829, 863 (3d Cir. 1990) (noting that fear of a successive suit is not sufficient to show prejudice); *John Evans Sons, Inc. v. Majik–Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D. Pa. 1982) (same).

*Loose v. North Wildwood City*, 2012 WL 480025 at *1 (D.N.J. Feb. 14, 2012) (Simandle, C.J.). I add that, should Morano seek to refile his claims in another forum, the resulting prejudice to the defendant, if any, can be assessed then.

Suggesting prejudice to absent prospective class members, BMW cites *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345 (2013). There, the Supreme Court ruled that a named plaintiff could not prevent the removal of his putative class action complaint by stipulating that the proposed class would seek less than $5 million in damages. However, the Supreme Court's ruling was based on its conclusions that (1) the named plaintiff could not legally bind other members of the proposed class to the stipulation; and (2) "federal jurisdiction cannot be based on contingent future events"; the nonbinding stipulation was "in effect contingent." *Id.* at 1346.

Here, however, Morano is not attempting to stipulate away other class members' right to recover over $5 million. Because no class has been certified (and because Morano is abandoning the effort to certify one), his fiduciary duties to potential class members are not great, and in

7

any event he cannot and does not seek to bind them. He has merely made a factual determination that there is less than $5 million at stake, and has decided to abandon a futile effort.[6]

This action is not on the verge of trial. Although it has been pending for some time, there is no class certification motion pending, and discovery is seemingly still in progress. The plaintiff has not been dilatory in bringing this motion for dismissal, which is based on matters uncovered in discovery. And assuming there is some subsequent lawsuit, any discovery already turned over can be used in that action, so the effort and expense will not be wasted.

In short, because I see no particular prejudice to the defendant, I will grant the motion.

## CONCLUSION

For the foregoing reasons, Morano's motion for voluntary dismissal (ECF No. 58) pursuant to Fed. R. Civ. P. 41(a)(2) is GRANTED, with costs but without prejudice.

Dated: June 11, 2015

_____
**Kevin McNulty**
**United States District Judge**

---

[6] There remains the possibility that putative class members could have been lulled by the existence of this action. Because there has been no class certification, any potential plaintiffs who withheld their claims did so at their own risk. But should a class member subsequently bring a claim that would otherwise be time barred, a court may consider whether the limitations period should be tolled. I take no position on that issue.